```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                     CHARLOTTE DIVISION
                      3:09CV196-MU-02
```

```
DONALD GENE KEENER,            )
     Plaintiff,                )
                               )
       v.                      )
                               )
UTILIZATION REVIEW BOARD       )
   PANEL MEMBERS;              )
NORTH CAROLINA GRIEVANCE       )
   RESOLUTION BOARD;           )
PAULA SMITH;¹                  )
MEDICAL STAFF AT CALEDO-       )
   NIA CORRECTIONAL INSTI-     )
   TUTION;                     )
MEDICAL STAFF AT SCOTLAND      )
   CORRECTIONAL INSTITU-       )
   TION;                       )
MEDICAL STAFF AT MARION        )
   CORRECTIONAL INSTITU-       )
   TION;                       )
MEDICAL STAFF AT PASQUO-       )
   TANK CORRECTIONAL INSTI-    )
   TUTION; and                 )
MEDICAL STAFF AT LANES-        )
   BORO CORRECTIONAL IN-       )
   TUTION,                     )
     Defendants.               )
_____)
```

**THIS MATTER** comes before the Court on review of Plaintiff's form-civil rights Complaint, filed May 12, 2009.  Such Complaint sets forth allegations concerning matters which reportedly occurred over a seven-year period when Plaintiff was housed at five

---

[1]Although they are named as Defendants to this action, Plaintiff's Complaint does not set forth any allegations against either the North Carolina Grievance Resolution Board or Paula Smith, the Chief of Health Services.

of the above-noted correctional institutions.  However, upon this Court's careful review of those allegations, it has determined that the vast majority of them relate to matters which occurred outside of the Western District of North Carolina; therefore, those matters must be transferred to the proper venue.  Furthermore, the Court has determined that the violations which allegedly occurred at Marion Correctional Institution ("Marion," hereafter) are subject to dismissal as time-barred; and that the allegations concerning the medical staff at Lanesboro Correctional Institution ("Lanesboro," hereafter) are subject to dismissal for their failure to state a constitutional claim for relief.  Accordingly, those allegations will be summarily <u>dismissed</u>.

## I.  **FACTUAL BACKGROUND**

Plaintiff alleges that in or about 2002 to 2003, while he was in the custody of the Caledonia Correctional Institution ("Caledonia," hereafter) –- which facility is situated outside the Western District of North Carolina –- he developed a skin condition "consisting of numerous small eraser size lesions spread over a wide are of legs, back, and torso."  Plaintiff alleges that the prison doctor ultimately treated his condition with weekly doses of 20 mg. of Methotroxate which, after 12 weeks, cleared up the problem.  Plaintiff further reports that the doctor wrote orders for him to undergo bi-annual blood tests

2

in order to detect liver damage from the medication, but failed to write orders for liver biopsies. Plaintiff asserts that such biopsies are the "standard" means by which to detect liver damage.

Plaintiff further alleges that in or around 2003 to 2004 when he was transferred to Scotland Correctional Institution ("Scotland," hereafter) -- which also is located outside of this judicial district, the medical staff there failed to recognize his need for liver biopsies. Nevertheless, Plaintiff was continued on the same weekly dosages of Methotroxate until around 2005 when Plaintiff was transferred to Marion. At that time, Plaintiff was advised of his doctor's concern about the sustained high dosages of Methotroxate which he was receiving. According to Plaintiff, his doctor, over Plaintiff's objections, lowered the dosages of the Methotroxate to 15 mg. per week. Plaintiff alleges that although the lesions began to return, the doctor refused to increase his dosages back to the original levels.

At some later point in 2005 or 2006, Plaintiff allegedly was transferred out of this judicial district to Pasquotank Correctional Institution ("Pasquotank," hereafter), at which point his lesions reportedly became as severe as they were when his condition originally was diagnosed in 2002. As a result, Plaintiff alleges that his doctor began treating his "flare-ups" with steroid tablets, but still decreased his medication to 10 mg. per

3

week because Plaintiff's "enzymes [were] outside normal limits."

In addition, over the next several years after Plaintiff returned to Scotland, he continued to experience severe flare-ups. As a result of those flare-ups, a doctor authorized Plaintiff to be treated by a non-prison dermatologist. According to Plaintiff, the dermatologist recommended aggressive treatment in the form of increasing the dosage of his Methotroxate. However, that dermatologist further advised that until Plaintiff underwent a liver biopsy to determine if he could withstand the increased dosages, she would only prescribe topical creams to treat his condition.

Plaintiff reports that the dermatologist wrote an order for a liver biopsy in January 2007; and that he continued to be treated with various topical creams and with steroids while he awaited approval of the biopsy request from the Utilization Review Board (the "URB," hereafter). In the meantime, at some point in 2008, a doctor at Scotland reduced Plaintiff's Methotroxate regimen to 5 mg. per week.

In August 2008, Plaintiff returned to this judicial district when he was transferred to Lanesboro. Upon his arrival at Lanesboro, Plaintiff's condition initially was treated with the reduced Methotroxate dosages, topical creams and steroids. Plaintiff's doctor also authorized a return visit to his dermatologist. According to Plaintiff, the dermatologist gave him a

4

shot and wrote another order for a liver biopsy. However, at or about the end of 2008, the URB reportedly denied Plaintiff's request for a liver biopsy. In December 2008, Plaintiff reportedly was seen by a different doctor at Lanesboro, and was prescribed more steroids for his condition. In early 2009, Plaintiff's new doctor authorized a visit to a hepatologist. According to Plaintiff, the hepatologist conducted an assessment and wrote an order for a liver biopsy.

In March 2009, Plaintiff's weekly dosages of Methotroxate were discontinued, but he continued to receive the steroids and the topical creams. In April 2009, the doctor reportedly advised Plaintiff that his requests for a biopsy again were under review, and that he would be seen in the medical department at two-week intervals. At the end of April 2009 when Plaintiff reported worsening symptoms, a search of his cell revealed that he had two too many steroid pills in his possession. On that occasion, a nurse questioned Plaintiff about whether he was taking his pills as directed, and he admitted that he accidentally had missed two dosages. Upon that admission, the nurse told Plaintiff that he no longer would be allowed to self-medicate. In response, Plaintiff told the nurse that he no longer would use the topical creams because, according to certain material from which Plaintiff quotes, the creams were "unresponsive and damaging his skin with no benefit."

5

On May 5, 2009, after reportedly reading materials which stated that treating his condition with steroids was "very, very controversial," Plaintiff advised certain prison guards of that information and of his intention also to refuse the steroid pills. Later that same day, Plaintiff advised his doctor of the information and of his intent to refuse both the steroids and the creams. From that point until May 12, 2009 -- the date on which the instant Complaint was filed, Plaintiff reportedly has continued to refuse the prescribed courses of treatment. Also, at the time that he filed this Complaint, Plaintiff's most recent request for a liver biopsy still was pending a decision from the URB in Raleigh.

In any case, based upon the foregoing reported events, Plaintiff alleges that he has been subjected to deliberate indifference by the URB and the medical staffs of each of the prisons at which he was housed. By way of relief, Plaintiff seeks declaratory and injunctive relief, along with more than one million dollars in damages. Notwithstanding Plaintiff's apparent belief to the contrary, however, this Court finds that it must dismiss certain of his allegations.

Indeed, the Court notes that while there is no federal statute of limitations for actions brought under Section 1983, civil rights plaintiffs still are limited by the most analogous state statute of limitations. For statute of limitations pur-

poses, claims of this nature brought under 42 U.S.C. §1983 typically are construed as personal injury actions. See Wallace v. Kato, 127 S.Ct. 1091 (2007); Owens v. Okure, 488 U.S. 235 (1989); and Wilson v. Garcia, 471 U.S. 261 (1985). In North Carolina, the statute of limitations for personal injury and, thus, for Plaintiff's claims, is three years. See N.C.Gen.Stat. §§1-52; Love v. Alamance County Bd. Of Educ., 757 F.2d 1504, 1506 (4th Cir. 1985). That is, the foregoing statutory provision requires that a personal injury action be commenced within three years of the date upon which the claim allegedly arose. National Advertising Co., 947 F.2d 1158, 1161-62 (4th Cir. 1991).

Here, Plaintiff's Complaint makes it clear that the matters which allegedly occurred at Marion took place between 2004 and 2005, which period is at least four years ago. Hence, because more than three calendar years elapsed between the time that the subject acts reportedly occurred and the time that Plaintiff filed this lawsuit, his allegations against the medical staff at Marion must be dismissed as time-barred.

Plaintiff's allegations against the medical staff at Lanesboro also are subject to dismissal. To be sure, while the Court is not unsympathetic to Plaintiff's alleged difficulties, after careful review of the instant pleading, the Court finds that he has failed to state a constitutional claim for relief on those allegations.

7

Specifically, Plaintiff's allegations do not establish deliberate indifference by the Lanesboro medical staff. Rather, the subject allegations make it plain that up until the time that Plaintiff began refusing his medication, he regularly was being treated by Lanesboro's medical staff.  Plaintiff also was allowed a consultation with a non-prison specialist.  Far from indifference, such information clearly shows that Plaintiff's skin problem was closely being monitored, and he was being prescribed medication for his condition.  Thus, Plaintiff's issue with the medical staff at Lanesboro appears to be one of disagreement over the recommended course of treatment not deliberate indifference to his problem.  However, it is well settled that a plaintiff's disagreement with the course of prescribed treatment cannot state a claim for relief for deliberate indifference against his medical providers.  See Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975) (mere disagreement between inmate and physician about course of treatment does not state a claim for deliberate indifference to serious medical needs under Eighth Amendment). Therefore, Plaintiff cannot proceed with this claim.

With regard to Plaintiff's remaining claims, the Court finds that those matters should be transferred to another judicial district.  Indeed, venue in a civil action based upon a federal question, i.e., alleged violations of an inmate's civil rights, is proper in:  1) a judicial district where any defendant re-

8

sides, if all defendants reside in the same State; 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or 3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  See 28 U.S.C. §1391(b).

Plaintiff's Complaint does not set forth the personal addresses for the remaining Defendants, i.e., the members of the URB, the members of the Grievance Resolution Panel, Paula Smith, or the medical personnel from Caledonia, Scotland and Pasquotank. However, the Court is mindful of Plaintiff's assertions that the URB and Paula Smith's business offices both are located in Raleigh, North Carolina, and that Raleigh is situated within the Eastern District of North Carolina.  Furthermore, the Court also is aware that Caledonia and Pasquotank also are located within the Eastern District of North Carolina; and that Scotland is located in a town which is situated just beyond the Eastern District within the Middle District of North Carolina.

Because it is highly unlikely that any one of the personnel for the remaining Defendants resides within this judicial district, the Court finds that Plaintiff's remaining claims should be transferred to the United States District Court for the Eastern District of North Carolina, that is, the judicial

9

district in which the majority of the claims allegedly arose and where most Defendants likely reside.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Plaintiff's allegations against the medical staff at Marion Correctional Institution are **DISMISSED** as time-barred;

2. Plaintiff's allegations against the medical staff at Lanesboro Correctional Institution are **DISMISSED** for his failure to state a constitutional claim for relief as to them; and

3. Plaintiff's remaining allegations are **TRANSFERRED** to the United States District Court for the Eastern District of North Carolina.

**SO ORDERED.**

Signed: July 20, 2009

Graham C. Mullen
United States District Judge